# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>SHINYA IMAMURA, IRYO HOJIN )<br>NISHIKAI, IRYO HOJIN SHADAN )<br>IMAMURA CLINIC, KABUSHIKI KAISHA )<br>BELLEVUE TRADING, KABUSHIKI KAISHA )<br>MARUHI, KOEKI ZAIDAN HOJIN )<br>JINSENKAI, KONNO GEKA CLINIC, )<br>AKIRA KONNO, MASAHIRO YAMAGUCHI, )<br>and JUNKO TAKAHASHI on behalf of )<br>themselves and all others )<br>similarly situated, )<br> )<br>              Plaintiffs, )<br> )<br>      v. )<br> )<br>GENERAL ELECTRIC COMPANY, and DOES )<br>1-100, inclusive, )<br> )<br>           Defendants. )<br>_____) | Civil Action<br>No. 17-12278-PBS |

## MEMORANDUM AND ORDER

April 8, 2019

Saris, C.J.

## INTRODUCTION

Plaintiffs, four individuals and six business entities from Fukushima Prefecture in Japan, bring this proposed class action against Defendant General Electric Co. ("GE") seeking monetary damages for property damage and economic harm caused by the tragic 2011 tsunami and resulting nuclear disaster at the Fukushima Daiichi Nuclear Power Plant ("FNPP"). Plaintiffs sue

individually and on behalf of putative classes of over 150,000 citizens and hundreds of businesses that suffered property damage or economic injury as a result of the FNPP disaster. They seek both compensatory and punitive damages. Plaintiffs allege that GE negligently designed the FNPP's nuclear reactors and safety mechanisms. GE has moved to dismiss this lawsuit on a number of grounds, including forum non conveniens. Because Plaintiffs have an adequate remedy for their injuries in Japan and trial in Massachusetts would be overly burdensome for the parties and the Court, the Court **ALLOWS** GE's motion to dismiss for forum non conveniens (Docket No. 38).

**FACTUAL BACKGROUND**

As required on a motion to dismiss for forum non conveniens, the following factual background is drawn from the amended complaint. See <u>Vivendi SA v. T-Mobile USA Inc.</u>, 586 F.3d 689, 691 n.3 (9th Cir. 2009); <u>Aguas Lenders Recovery Grp. LLC v. Suez, S.A.</u>, 585 F.3d 696, 697 (2d Cir. 2009).

## I.    **The Fukushima Daiichi Nuclear Power Plant ("FNPP")**

The FNPP was built for the Tokyo Electric Power Company ("TEPCO") in Fukushima Prefecture in Japan in the late 1960s. The FNPP contains six boiling water reactors, all of which were designed by GE. GE constructed Units 1, 2, and 6 and provided expertise and the designs for Units 3, 4, and 5, which were built by Toshiba Corp. and Hitachi Ltd. GE also designed the

rest of the facility and has participated in regular maintenance ever since.

Plaintiffs allege many problems with GE's design of the plant, including 1) lowering the bluff over the ocean where the plant was built by twenty-five meters to reduce costs; 2) placing the emergency generators and seawater pumps in the basement of the turbine building without protection against flooding; 3) not ensuring a backup power source in case the generators failed; and 4) not including space to accommodate sufficient emergency equipment. These design issues were especially problematic given the region's well-known history of tsunamis, including a 38.2-meter wave that killed 27,000 people in 1896 and a 28.7-meter wave that killed 3,000 people in 1933.

## II. <u>2011 Tsunami and Meltdown</u>

On the afternoon of March 11, 2011, a 9.0-magnitude earthquake struck Japan. The FNPP's nuclear reactors shut down automatically, and control rods were inserted into the core to stop the nuclear reactions. The plant disconnected from the power grid, but the diesel backup generators continued to run the cooling systems. Within an hour, a 45-foot tsunami triggered by the earthquake reached shore, flooded the plant, disabled the generators, and destroyed the emergency cooling pumps. Government authorities soon began evacuating neighboring communities.

Without power, the plant's cooling systems could not function properly. As the coolant and water levels dropped in the reactors, the nuclear cores began to heat up and melt down. The melting released hydrogen gas, which further increased the heat and pressure. The operators of the plant considered opening vents to relieve the heat and pressure, but there was no mechanism to filter out radioactive material and the neighboring communities had not yet been fully evacuated. Hydrogen gas continued to accumulate within the reactors, and Units 1, 3, and 4 all exploded over the next four days. The explosions released dangerous radioactive materials into the environment. Plaintiffs allege that GE's problematic design of the plant and reactors caused the nuclear explosions.

**III. <u>Aftermath of the Disaster</u>**

Fukushima Prefecture suffered immense damage from the disaster. Many of the citizens who were evacuated from the surrounding communities lost their homes, land, and jobs. Much of the area around the FNPP remans uninhabitable today due to the risk of exposure to radioactive materials. Even some property outside the evacuation zone sustained damages from radioactive ash.

The disaster wiped out Fukushima Prefecture's well-known tourist and agriculture industries. Hotels, golf courses, and other tourist attractions in and around the evacuation zone are

still unusable. The region used to grow many agriculture products, but it is now unsafe to consume any food from the region. Radioactive discharge also continues to flow into the Pacific Ocean and contaminate the local fish stock.

The disaster forced more than 1,700 companies to close. Some business properties are covered in radioactive waste, and the remediation measures required to reopen are extremely expensive. Other business, such as privately owned hospitals, medical and dental clinics, restaurants, and educational facilities, had to close because they had no customers. Much of the infrastructure in and around the evacuation area has not been repaired, including government buildings, sidewalks, roads, sewers, schools, hospitals, and roads.

## IV.  **Japanese Compensation System**

Under the Act on Compensation for Nuclear Damage ("the Act"), only TEPCO is liable for damages arising from the FNPP disaster. No other entity or individual involved in the construction or operation of the FNPP plant or the response to the disaster is required to provide compensation to victims. The Act creates strict liability for TEPCO, so claimants must only prove causation and damages to secure compensation. TEPCO is liable for all damages proximately caused by the FNPP disaster. The statute of limitations for claims against TEPCO is ten years. There is no cap on TEPCO's overall liability.

Victims may pursue compensation from TEPCO via three methods: 1) submission of direct claims to TEPCO; 2) mediation of claims against TEPCO through the Nuclear Damage Claim Dispute Resolution Center ("ADR Center"); and 3) lawsuits against TEPCO. These avenues for compensation are not mutually exclusive: for example, a victim may file an administrative claim and then initiate a lawsuit if she is unsatisfied with her compensation.

A victim seeking compensation directly from TEPCO submits a standard form with evidence of her loss. TEPCO reviews the form and pays the victim based on its uniform guidelines. Among other forms of damages, TEPCO's guidelines call for compensation to businesses for reputational harm and loss of sales. Over two million victims have filed claims directly with TEPCO.

The ADR Center is a public mediation service under the supervision of the Dispute Reconciliation Committee for Nuclear Damage Compensation ("DRC"). The ADR Center is overseen by a three-member committee comprised of two independent lawyers and a law professor. A victim may file a claim with the ADR Center in addition to, or as an alternative to, a direct claim with TEPCO. The DRC has issued a number of guidelines for compensation for the FNPP disaster. Although these guidelines do not have the force of law, they provide the framework for mediations through the ADR Center. The guidelines provide for compensation for lost real estate value and business

interruption damages, including "rumor damages" for businesses in certain industries that are subject to customer concerns about radioactive contamination. There is no filing fee for submitting a claim to the ADR Center, and claimants can proceed pro se or with an attorney. The mediations are supervised by attorneys. As of February 1, 2019, claimants have filed 24,426 cases with the ADR Center, 18,890 of which have resulted in settlements.

Because the claims process with TEPCO and through the ADR Center is confidential, there is little publicly available information on the value of these settled claims. Settlements through the ADR Center appear to vary widely. Certain claimants, including some who reside outside the designated evacuation zones, have received nothing from TEPCO. Others have received as little as two-and-a-half percent of the damages sought. On the other hand, TEPCO has agreed to pay a number of businesses more than $500,000 for property damage and business losses.

A victim may file a lawsuit against TEPCO right away or after receiving an unsatisfactory settlement through these other mechanisms. Japanese law recognizes tort causes of action and awards damages for harm to property and business losses. Although there is no mechanism under Japanese law to file a class action for claims arising from a nuclear disaster, multiple plaintiffs may join together in one lawsuit. In fact, a

number of parties have already joined together in mass actions against TEPCO. To file a lawsuit, a plaintiff must pay a filing fee of no more than one percent of the value of the case. As of March 30, 2018, around 440 lawsuits had been filed against TEPCO, 50 of which ended with judgments and 110 with settlements.

There is no comprehensive database of Japanese court judgments. Anecdotally, judgments in cases involving property damage and business losses have ranged from $182 to $658,462 per plaintiff. To avoid double recovery, courts reduce their judgments to account for compensation the plaintiffs have received from TEPCO via other means.

As of February 15, 2019, TEPCO has paid out more than $79 billion to business entities and individuals for losses arising from the FNPP disaster. Many of the claims have involved property damage and economic loss for business activities. To ensure that operators of nuclear plants like TEPCO have the money to pay claims, the Act requires that they carry insurance and enter into an indemnity agreement with the Japanese government. TEPCO has so far received $1.7 billion from the government through its indemnity agreement. Furthermore, after the FNPP disaster, the Japanese government set up the Nuclear Damage Compensation and Decommissioning Facilitation Corporation to contribute further capital to TEPCO for compensation. Through

bond issuances, the government plans to contribute around $121 billion to the NDF.

## V.  **Procedural History**

Plaintiffs are four Japanese citizens and six Japanese business entities that lived or operated in Fukushima Prefecture at the time of the FNPP disaster. They filed suit against GE on November 17, 2017. After GE moved to dismiss the original complaint, Plaintiffs filed an amended complaint on May 21, 2018. Plaintiffs bring seven claims: negligence (Count I), strict product liability for manufacturing and design defects (Counts II and III), and damage to real property (Count IV) under Massachusetts law; and negligence (Count V), failure to warn (Count VI), and diminution of value to real property and business interests (Count VII) under Japanese law.

On July 19, 2018, GE moved to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the doctrine of forum non conveniens. GE argues that 1) the Convention on Supplementary Compensation for Nuclear Damage ("CSC") strips the Court of subject matter jurisdiction; 2) Japanese law applies to this lawsuit and Japan's Act on Compensation for Nuclear Damage channels all liability for the FNPP disaster to TEPCO, the operator of the plant; 3) the case should be dismissed under forum non conveniens; 4) Plaintiffs' claims are time-barred by the Massachusetts statutes of

limitations and repose; and 5) Plaintiffs fail to state a claim for various other reasons.

If "a foreign tribunal is plainly the more suitable arbiter of the merits of the case," a court may dismiss for forum non conveniens without resolving whether it has subject matter jurisdiction. Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 425 (2007). The Court therefore assumes without deciding that it has jurisdiction over this lawsuit despite the exclusive jurisdiction provision of the CSC. See Cooper v. Tokyo Elec. Power Co., 860 F.3d 1193, 1205 (9th Cir. 2017) (holding that the CSC does not strip courts of jurisdiction over claims arising from the FNPP disaster). For the reasons set forth below, the Court finds that dismissal is appropriate under the doctrine of the forum non conveniens and therefore does not address GE's other arguments for dismissal.

## DISCUSSION

Forum non conveniens permits dismissal of a case, even if the court has jurisdiction, when "an alternative forum is available in another nation which is fair to the parties and substantially more convenient for them or the courts." Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992). The doctrine is "flexible" and "practical," and its application depends on the facts of a given case. Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 950 (1st Cir. 1991). "When a

defendant moves for dismissal on forum non conveniens grounds, it bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000).

## I.  Adequate Alternative Forum

The sine qua non of forum non conveniens is the existence of an adequate alternative forum. See Associação Brasileira de Medicina de Grupo v. Stryker Corp., 891 F.3d 615, 620 (6th Cir. 2018) ("If there is no suitable alternate forum where the case can proceed, the entire inquiry ends."); see also Iragorri, 203 F.3d at 13 (directing courts to begin with the adequate alternative forum analysis). The defendant bears the burden of showing an adequate alternative forum and must put forth some evidence that such a forum exists. See Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 425 (1st Cir. 1991). This requirement is met if "the alternative forum addresses the types of claims that the plaintiff has brought and . . . the defendant is amenable to service of process there." Iragorri, 203 F.3d at 12.

In Piper Aircraft Co. v. Reyno, the Supreme Court described the adequate alternative forum requirement as follows:

> Of course, if the remedy provided by the alternative
> forum is so clearly inadequate or unsatisfactory that
> it is no remedy at all, the unfavorable change in law

11

> may be given substantial weight; the district court
> may conclude that dismissal would not be in the
> interests of justice. In these cases, however, the
> remedies that would be provided by the Scottish courts
> do not fall within this category. Although the
> relatives of the decedents may not be able to rely on
> a strict liability theory, and although their
> potential damages award may be smaller, there is no
> danger that they will be deprived of any remedy or
> treated unfairly.

454 U.S. 235, 254-55 (1981) (footnote omitted); see also id. at

254 n.22 ("[W]here the remedy offered by the other forum is

clearly unsatisfactory, the other forum may not be an adequate

alternative . . . ."). This language speaks only about whether

dismissal would deprive the plaintiff of a satisfactory remedy.

Courts cannot consider that the law in the alternative forum may

be more favorable to the defendant. See id. at 252 n.19; see

also de Melo v. Lederle Labs., 801 F.2d 1058, 1061 n.3 (8th Cir.

1986) (noting that the Court held in Piper that "the fact that a

defendant may be engaged in reverse forum shopping . . . should

not enter the district court's analysis").

A remedy available through an administrative compensation

scheme can render a foreign country an adequate alternative

forum. See, e.g., Veljkovic v. Carlson Hotels, Inc., 857 F.3d

754, 756 (7th Cir. 2017); Tang v. Synutra Int'l, Inc., 656 F.3d

242, 250 (4th Cir. 2011); Lueck v. Sundstrand Corp., 236 F.3d

1137, 1144-45 (9th Cir. 2001). But see Nat'l Hockey League

Players' Ass'n v. Plymouth Whalers Hockey Club, 166 F. Supp. 2d

1155, 1164 (E.D. Mich. 2001) ("Piper does not appear to consider an administrative remedy adequate."). The Ninth Circuit's reasoning in Lueck is instructive. Lueck involved claims brought by New Zealand citizens arising from an airplane crash that occurred in New Zealand. 236 F.3d at 1140. The Ninth Circuit acknowledged that New Zealand law prohibited the plaintiffs from suing the defendants, the manufacturers of the aircraft and various components, and required them to seek compensation through an administrative claims process. Id. at 1141-42, 1144-45. But it noted that "[t]he forum non conveniens analysis does not look to the precise source of the plaintiff's remedy" and that it was irrelevant whether the plaintiffs could "maintain [the] exact suit" in the foreign forum. Id. at 1144-45. Instead, the court found New Zealand to be an adequate alternative forum because it "has provided and continues to provide a remedy for [their] losses." Id. at 1144.

This analysis dovetails with Piper's emphasis on the existence of any adequate remedy for a plaintiff's injury. Thus, "a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong," regardless of the source of that remedy. Id.; see also Tang, 656 F.3d at 250-51 (holding that a settlement fund created by manufacturers of contaminated infant formula rendered China an adequate alternative forum because "the forum non conveniens

13

doctrine does not limit adequate alternative remedies to judicial ones").

The parties agree that Plaintiffs cannot bring their claims against GE in Japan because the Act channels all liability from the FNPP disaster to TEPCO. GE contends that Plaintiffs still have three avenues for compensation in Japan: 1) direct claims filed with TEPCO, 2) claims against TEPCO through the ADR Center, and 3) damages lawsuits against TEPCO. Plaintiffs do not dispute that these avenues are available to them. Instead, they emphasize that they cannot secure a remedy from GE in Japan. To support this argument, they rely on cases that suggest that a foreign forum counts as an adequate alternative forum only when all parties to the American litigation can come under the jurisdiction of the foreign forum's courts. See, e.g. Associação Brasileira, 891 F.3d at 620 ("[A] foreign forum is not truly 'available' . . . if the foreign court cannot exercise jurisdiction over both parties."); Mercier, 935 F.2d at 424 ("[A] finding that there is a satisfactory alternative forum requires that . . . all parties can come within that forum's jurisdiction . . . ."); see also Deb v. SIRVA, Inc., 832 F.3d 800, 807-08 (7th Cir. 2016) (stating without analysis that "the defendants have the burden of demonstrating that an alternate forum is available — in other words, that [the plaintiff] could sue these defendants . . . in India").

In the cases Plaintiffs cite, however, the courts did not directly address the question presented here of whether the foreign forum must permit a remedy against the specific defendant sued in the American litigation where the forum provides an adequate remedy from another party or entity. Based on the language of Piper and the persuasive reasoning of the administrative compensation cases, the answer to this question is "no," so long as the alternative forum provides an adequate remedy.

GE must show that the alternative remedy is not "so clearly inadequate or unsatisfactory that it is no remedy at all." Piper, 454 U.S. at 254; see also Nemariam v. Fed. Democratic Republic of Eth., 315 F.3d 390, 395 (D.C. Cir. 2003) (holding that an administrative commission provided an inadequate remedy because it could not award damages to the plaintiff directly). GE has met this burden by demonstrating that many plaintiffs have successfully received satisfactory compensation through lawsuits against TEPCO in Japanese courts and claims directly with TEPCO and through the ADR Center.

TEPCO is strictly liable for damages proximately caused by nuclear damage from the FNPP disaster. Plaintiffs can sue TEPCO in Japanese courts until the ten-year statute of limitations expires in 2021. Tort claims are cognizable under Japanese law, and Japanese courts award damages for harm to property and

economic losses. Plaintiffs need not pursue mediation through the ADR Center before filing lawsuits. They can also seek compensation by filing claims directly with TEPCO or through the ADR Center. There is no filing fee, and Plaintiffs can be represented by an attorney. The mediations are governed by guidelines issued by the Japanese government. Though it does not provide a judicial remedy, the ADR Center mediation is similar to the administrative compensation schemes upheld in cases like Lueck. TEPCO's unlimited liability and the financial support of the Japanese government ensure that TEPCO will continue to be able to pay compensation via judicial and administrative mechanisms.

Plaintiffs attack these routes to a remedy in a number of ways. First, they argue that the compensation award they can win through either of these routes is inadequate. A remedy is inadequate only if it is "basically unjust." Ahmed v. Boeing Co., 720 F.2d 224, 226 (1st Cir. 1983). Although Plaintiffs contend that judgments and settlements directly from TEPCO or through the ADR Center are not as high as a verdict in the United States might be, GE has demonstrated that victims have received tens or hundreds of thousands of dollars in compensation for property damage and business losses. These verdicts are not unjust. See, e.g., Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 664, 666 (9th Cir. 2009)

(finding Mexico to be an adequate forum even though it capped wrongful death damages at $12,000 to $13,000); Gonzalez v. Chrysler Corp., 301 F.3d 377, 380-82 (5th Cir. 2002) (finding Mexico to be an adequate forum even though it capped damages for the loss of a child's life at $2,500). The fact that victims may pursue claims through litigation after having received some compensation via the administrative scheme buttresses GE's claim that Japan is providing an adequate remedy. Plaintiffs provide no reason to believe the average victim is receiving unjust compensation. They state that certain individuals received no compensation or only a fraction of what they sought, but they do not explain what damages they suffered or how the FNPP disaster caused those damages. The Court therefore cannot conclude from these anecdotal examples that individuals with meritorious claims are receiving inadequate compensation.

Second, Plaintiffs raise what they see as two deficiencies in the Japanese judicial system. Plaintiffs are correct that they could not bring a class action against TEPCO in Japan. However, they can join together in a single lawsuit, as many have done in litigation arising from the disaster. See Fischer v. Magyar Allamvasutak Zrt., 777 F.3d 847, 862 (7th Cir. 2015) (holding that the ability of multiple plaintiffs to join together in one lawsuit meant that the absence of class action procedures did not render the foreign forum inadequate).

Japanese courts require payment of a filing fee to initiate a lawsuit, but it is never more than one percent of the value of the case. While the Court recognizes that many class members may be indigent, Plaintiffs have not shown that such an amount is unreasonable. Compare Henderson v. Metro. Bank & Tr. Co., 502 F. Supp. 2d 372, 379-80 (S.D.N.Y. 2007) (denying a motion to dismiss for forum non conveniens where three plaintiffs faced a $5 million filing fee to bring a lawsuit in the Philippines), with Stroitelstvo Bulg. Ltd. v. Bulg.-Am. Enter. Fund, 589 F.3d 417, 424 (7th Cir. 2009) (declining to find Bulgaria to be an inadequate forum based on its four percent filing fee), and Mercier, 981 F.2d at 1353 & n.7 (finding Turkey to be an adequate forum despite the required fifteen percent bond for foreign litigants to initiate a lawsuit).

Third, Plaintiffs assail the ADR Center mediation process because it is complex, opaque, and managed by TEPCO. They analogize this case to In re Assicurazioni Generali S.p.A Holocaust Insurance Litigation, in which the court found a commission set up by several insurance companies and nonprofits to be an inadequate forum to resolve unpaid Holocaust-era insurance claims because it was a nonjudicial, private entity that was controlled by the insurance companies and there was nothing stopping the companies from withdrawing from the commission. See 228 F. Supp. 2d 348, 353-58 (S.D.N.Y. 2002). The

ADR Center is a public mediation forum established under Japanese law. It is therefore independent from TEPCO, and TEPCO cannot unilaterally withdraw. Plaintiffs put forth no evidence to indicate that TEPCO is not participating in good faith with the ADR Center, but even if it were not, Plaintiffs could sue TEPCO in court for an adequate remedy. Although the administrative guidelines for seeking compensation from TEPCO directly or through the ADR Center are complex, understanding the process is no more difficult than understanding how to file and prosecute a lawsuit. In any event, the fact that over two million claimants have filed for compensation directly with TEPCO and almost twenty-five thousand have done so through the ADR Center belies the notion that the process is too complex for class members to secure an adequate remedy.

Finally, Plaintiffs contend that the guidelines that govern TEPCO's direct claims process and mediations through the ADR Center exclude certain class members from compensation. Specifically, they point to class members outside of the evacuation zones and in areas where government restrictions have been lifted. As Plaintiffs acknowledge, however, the guidelines expressly contemplate awarding compensation to otherwise excluded claimants who can demonstrate a causal relationship between the FNPP disaster and their damages. Most importantly, an individual or business that does not receive compensation

through the administrative scheme can seek a remedy through the
courts. Accordingly, Japan is an adequate alternative forum for
Plaintiffs' claims.

## II.  **Private and Public Interest Factors**

### A.   **Legal Standard**

The Court therefore proceeds to analyze the private and
public interest factors. In doing so, a court must give the
plaintiff "some degree of deference for his original choice of
forum." Adelson v. Hananel, 510 F.3d 43, 53 (1st Cir. 2007).
Accordingly, a court can only dismiss a case if the balance of
private and public interest factors "strongly favor[s]"
resolving the claims in the alternative forum. Iragorri, 203
F.3d at 12; see also Adelson, 510 F.3d at 54 (declining to
dismiss where the balance of factors was "in equipoise"). A
foreign plaintiff's choice of a U.S. forum, however, receives
less deference than an American plaintiff's choice of his home
forum because "the assumption that the chosen forum is
appropriate is in such cases 'less reasonable.'" Sinochem Int'l
Co., 549 U.S. at 430 (quoting Piper, 454 U.S. at 255-56). The
plaintiff's choice of forum also receives less deference if it
appears motivated by forum shopping. See Interface Partners
Int'l Ltd. v. Hananel, 575 F.3d 97, 102 n.9 (1st Cir. 2009).

Among the private interest factors courts consider are
1) the relative ease of access to proof; 2) the availability and

costs of compulsory process for attendance of unwilling witnesses; 3) comparative trial costs; 4) the ability to enforce a judgment; and 5) other practical problems that would make the trial cumbersome, time-consuming, or costly. Iragorri, 203 F.3d at 12; Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 719 (1st Cir. 1996). Factors relevant to the public interest include 1) administrative difficulties of docket congestion; 2) the local interest in adjudicating the lawsuit; 3) avoidance of unnecessary choice of law or foreign law questions; and 4) the unfairness of jury duty for citizens in an unrelated forum. Iragorri, 203 F.3d at 12; Mercier, 981 F.2d at 1354. These factors are "illustrative rather than all-inclusive," and "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." Iragorri, 203 F.3d at 12 (quoting Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 527 (1947)).

### B. Deference to Plaintiffs' Choice of Forum

Plaintiffs are all Japanese citizens and businesses with no connection to the United States. It seems they sought an American forum at least in part to avoid Japanese law absolving GE of liability for the FNPP disaster. Plaintiffs' choice to file their lawsuit in Massachusetts is thus entitled to some, but not great, deference. The lesser deference given to Plaintiffs' choice of forum differentiates this forum non

conveniens analysis from the Ninth Circuit's analysis in Cooper, another lawsuit arising from the FNPP disaster where the plaintiffs were U.S. citizens and members of the U.S. Navy whose choice of an American forum was entitled to more deference. See 860 F.3d at 1211.

**C.   Private Interest Factors**

The private interest factors weigh in favor of dismissal because of the difficulty of accessing relevant evidence for use in this Court and the Court's inability to compel production of important Japanese documents and testimony from Japanese witnesses and to implead potentially liable third parties.

*1.   Relative Ease of Access to Sources of Proof*

Because the vast majority of the events giving rise to Plaintiffs' claims took place in Japan, GE plausibly states that it would use significant material evidence currently located in Japan at the trial. As GE notes, all evidence concerning the plant's layout at the time of the disaster, changes TEPCO made after GE installed the reactors, safety measures and maintenance steps TEPCO took or failed to take, what occurred when the tsunami struck, and how TEPCO and the government responded to the disaster is located in Japan. So is all evidence about whether GE's design caused Plaintiffs' property damage and economic harm and what damages Plaintiffs suffered. Most witnesses would be current and former TEPCO employees and

officers, Japanese government officials, and Plaintiffs and their associates. GE's attorney states in an affidavit that he expects to rely on all of this evidence at trial. The burdens of obtaining this evidence and translating it for an American court are substantial. See Blanco v. Banco Indus. de Venez., S.A., 997 F.2d 974, 982 (2d Cir. 1993) (noting that the "significant cost to the parties and delay to the court" of having to translate all of the relevant documents and testimony "militate[] strongly in favor of" dismissal).

Plaintiffs argue that documents and witnesses relating to the design, manufacture, and maintenance of the reactors are located in the United States within GE's control. Some important evidence relevant to this case, specifically concerning GE's maintenance of the FNPP in the years immediately preceding the disaster, is likely in the United States. However, since the FNPP's reactors were designed and deployed more than fifty years ago, it is unlikely there are many witnesses in the United States knowledgeable about the original design. The witnesses and documents in Japan likely far outnumber those in the United States, and the Japanese evidence is central to many core issues in the litigation, such as causation, damages, and apportionment of liability among third parties. See Mercier, 935 F.2d at 428 (requiring courts to consider the relevance and importance of evidence located in the two fora).

The Court does not discount that modern litigation often requires transporting witnesses transnationally. But litigation in this Court would increase the burden of accessing material evidence. The difficult access to sources of proof therefore favors dismissal.

> 2. *Availability of Compulsory Process and Cost of Obtaining Attendance of Unwilling Witnesses*

The Court's inability to compel the production of documents or other key physical evidence from sources in Japan increases the evidentiary problems with litigating this case in Massachusetts. J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., 515 F. Supp. 2d 1258, 1273 (M.D. Fla. 2007). Although Plaintiffs have evidence they can bring to Massachusetts to prove causation and damages, many important documents relating to TEPCO's maintenance of the plant and the Japanese government's response to the disaster are not in the control of either party and are outside the reach of the Court. GE plans to argue that the reactor meltdown would not have occurred, or would have caused less damage, if TEPCO, Toshiba, and Hitachi had not modified the plant and if TEPCO and the Japanese government had better managed the disaster response. It cannot effectively raise this defense without access to the Japanese evidence. See de Melo, 801 F.2d at 1062-63 (finding significant that evidence relevant

to a party's defenses was located in Brazil outside the reach of American courts).

Nor could the Court require the attendance at trial of the many key witnesses located in Japan. J.C. Renfroe, 515 F. Supp. 2d at 1271. GE's attorney stated that no Japanese witness would willingly testify. This is an exaggeration: surely at least some witnesses affiliated with Plaintiffs would willingly testify. But it is likely that many TEPCO employees and Japanese government officials would be unwilling to do so. Given that these witnesses may be key to GE's defenses, the inability to require them to testify favors dismissal. See Interface Partners, 575 F.3d at 105; Mercier, 981 F.2d at 1356.

Furthermore, the Hague Convention's streamlined method of securing transcribed testimony is not available here because Japan has not signed on to the Convention. See J.C. Renfroe, 515 F. Supp. 2d at 1272. Instead, under the U.S.-Japan Consular Convention, a party seeking to acquire testimony must take a deposition at a U.S. consulate supervised by a consular officer. Id. It usually takes six months to a year to obtain testimony from Japanese witnesses. Id. Notably, this process only applies to willing witnesses; to compel testimony from unwilling witnesses, parties must ask a U.S. court to issue a "letter rogatory" that passes through diplomatic channels and must be enforced by a Japanese judge. The benefits of avoiding these

burdensome and time-consuming methods of acquiring evidence also favor dismissal. See, e.g., Chang v. Baxter Healthcare Corp., 599 F.3d 728, 735 (7th Cir. 2010).

### 3. *Ability to Enforce a Judgment*

GE argues that the fact that a Japanese court may not enforce a class action judgment against it supports dismissal. Since GE is a Massachusetts corporation with significant assets here, it is unclear why Plaintiffs would need to seek to enforce an American judgment in Japan. This factor does not support either party.

### 4. *Other Practical Problems*

If the litigation remains in Massachusetts, GE could not implead third parties who may share responsibility for the disaster: TEPCO, the operator of the FNPP; Toshiba and Hitachi, which were involved in its construction; and the Japanese government, which helped respond to the disaster. It is unclear whether this Court has personal jurisdiction over Toshiba, Hitachi, or TEPCO, as Plaintiffs point to no contacts these Japanese corporations had with Massachusetts that relate to the FNPP plant. See LP Sols. LLC v. Duchossois, 907 F.3d 95, 102 (1st Cir. 2018) (noting that one requirement for personal jurisdiction is that the "claim directly arises out of or relates to the defendant's forum activities"); see also Bartel v. Tokyo Elec. Power Co., No. 17-cv-1671, 2018 WL 312701,

at *8 (S.D. Cal. Jan. 5, 2018) (dismissing claims against TEPCO in connection with the FNPP disaster for lack of personal jurisdiction). The Foreign Sovereign Immunities Act likely renders the Japanese government beyond the reach of the Court as well. See 28 U.S.C. § 1602.

Because GE plans to pin at least some responsibility on these third parties, it would suffer prejudice from its inability to implead them. "Such an accusation is surely less persuasive when aimed at a set of empty chairs." Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1284 n.4 (11th Cir. 2001). Plaintiffs argue that GE could seek indemnity or contribution against the absent third parties. It is unclear whether any American court would have jurisdiction over these parties in an indemnity or contribution action, and the channeling of liability to TEPCO under Japanese law likely precludes such an action against Toshiba and Hitachi in Japan. Accordingly, the inability to implead third parties favors dismissal. See Piper, 454 U.S. at 259 (noting in support of dismissal that the defendants could not implead third parties whose "[j]oinder . . . is crucial to the presentation of [their] defense"); Iragorri, 203 F.3d at 15 (upholding dismissal where the defendant "would be unable to implead other potentially responsible parties").

**D.    Public Interest Factors**

The public interest factors also favor dismissal because Japan's interest in this lawsuit far outweighs the local interest, the case involves complex choice of law and foreign law questions, and adjudication of this lawsuit would significantly burden the Court.

*1.    Local Interest in the Lawsuit*

Japan's interest in this lawsuit dwarfs any interest of the United States or Massachusetts. "[A] sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil." SME Racks, Inc v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1104 (11th Cir. 2004); accord Piper, 454 U.S. at 260. The FNPP disaster took place in Japan and harmed hundreds of thousands of Japanese citizens and businesses. The Japanese government extensively investigated the disaster and has brought criminal charges against TEPCO executives. See Lueck, 236 F.3d at 1147 (noting that New Zealand's interest was "extremely high" because the "accident and its aftermath, including the accident investigation, the post-investigation activity, and the various legal proceedings including an ongoing criminal probe, have all received significant attention by the local media").

Additionally, this lawsuit raises complex questions about the safe design of nuclear reactors and the future of nuclear

energy in Japan. Through the Act on Compensation for Nuclear Damage's scheme for providing compensation for nuclear disasters, the Japanese government has shown a strong interest in determining how to allocate liability and compensation for disasters occurring on its soil. This allocation is key for ensuring that companies are willing to enter the nuclear power business in Japan and citizens are adequately compensated when something goes wrong, which the Act lists as its two purposes. Adjudicating this lawsuit in the United States would interfere with the system Japan has set up for handling nuclear disasters.

The United States and Massachusetts certainly have an interest in deterring their corporate citizens from distributing dangerous products, but this interest is not strong in comparison to Japan's interest in this lawsuit. Piper, 454 U.S. at 260-61. Regardless of whether the CSC's exclusive jurisdiction provision strips this Court of jurisdiction over this lawsuit, it demonstrates the international consensus that a dispute over liability from nuclear disasters should be adjudicated in the country where it occurs, not in other jurisdictions with more tenuous connections to the disaster.

Plaintiffs argue that the local interest is strong here because GE reactors are present in nuclear power plants in Massachusetts and throughout the United States. However, this lawsuit centers on the Japanese nuclear regulatory system and

other circumstances unique to the FNPP. Any local interest in the litigation cannot match Japan's extremely strong interest.

### 2. *Choice of Law and Application of Foreign Law*

This case involves complex choice of law and foreign law issues. For tort cases, Massachusetts choice of law rules generally require application of "the substantive laws of the jurisdiction wherein the tort occurred." Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994). Because the disaster occurred in Japan, the Court would likely apply Japanese law to resolve this dispute. See Cooper v. Tokyo Elec. Power Co., No. 12cv3032-JLS (JLB), 2019 WL 1017266, at *9 (S.D. Cal. Mar. 4, 2019) (holding that "Japanese law applies to the issue of GE's liability" to members of the U.S. Navy allegedly exposed to radiation during the FNPP disaster), appeal filed, No. 19-55295 (9th Cir. Mar. 14, 2019). Although this factor is not dispositive, as American courts often apply foreign law, it nevertheless points to dismissal. See Piper, 454 U.S. at 260 & n.29.

### 3. *Court Congestion and Burden*

Adjudicating this dispute would place a heavy burden on the Court. Plaintiffs seek to certify two classes of over 150,000 Japanese individuals and business entities. As a preliminary matter, certification of a damages class is unlikely because defendant would have a strong argument that the individual

damages issues would predominate. Assuming this Court certifies a class under Federal Rule of Civil Procedure 23(b)(3), discovery into Japanese damages would be complex and extensive. Trial would require expending significant time and resources on interpreting witness testimony and translating reams of documents into English. Given the lack of a significant local interest in the lawsuit, the burdens this lawsuit would place on the Court also favor dismissal. See Lueck, 236 F.3d at 1147.

### E.    Conclusion

Many of the private and public interest factors support dismissal, most notably the difficulty in accessing evidence located in Japan, the difficulty of compulsory process, and the lack of a strong local interest in the dispute. Although one factor, the enforceability of a judgment, is neutral, none supports continuing to adjudicate this lawsuit in Massachusetts. Accordingly, although Plaintiffs' choice of forum is entitled to some deference, GE has met its burden of demonstrating that "considerations of convenience and judicial efficiency strongly favor [resolving] the claim in the alternative forum." Iragorri, 203 F.3d at 12.

## ORDER

The motion to dismiss is **ALLOWED** (Docket No. 38).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge